Martha M. KIRK, an adult, and Kenneth William Kirk, a minor, who sues by his Guardian ad Litem, Martha M. Kirk, Appellants,

v.

The UNITED STATES of America, Appellee.

No. 14766.

United States Court of Appeals Ninth Circuit.

April 13, 1956.

Rehearing Denied May 24, 1956.

Richards, Haga & Eberle, Boise, Idaho, for appellants.

Sherman F. Furey, Jr., U. S. Atty., John T. Hawley, Asst. U. S. Atty., Boise, Idaho, for appellee.

Before DENMAN, BONE and POPE, Circuit Judges.

POPE, Circuit Judge.

This is an appeal from a summary judgment for the defendant in an action brought under the provisions of the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b) and 2674 to 2680. The plaintiffs, appellants here, are the widow and minor child of William M. Kirk, who lost his life when he fell from a scaffold upon which he was working as a carpenter during the construction of Lucky Peak Dam on the Boise River in Idaho. The action was predicated upon the wrongful death statute of that State, § 5-311, Idaho Code.

Lucky Peak Dam was being constructed in accordance with plans and specifications prepared by the Department of Army, Corps of Engineers, under a contract between the United States and Bruce Construction Co. and Russ Mitchell Inc., general contractors for the construction of certain control works at the outlet of the dam. Kirk was an employee of these general contractors. He was not an employee of the United States.

The complaint alleged that Kirk's death came about when the scaffold upon which he was working broke, causing him to fall into the current of the river and to be carried into the tunnel; that the breaking of the scaffold and the fall of Kirk were due to the careless and negligent acts and omissions of the employees of the defendant.[1] After service of the complaint and before answer, each party submitted to the opponent requests for admissions and interrogatories, and responses thereto were filed by both parties. Thereafter, before time to answer expired, the defendant moved for

---

1. In answer to interrogatories plaintiff specified the acts of defendant claimed to have been negligent. These included failure to inspect and test the scaffold, or have it tested, the failure to provide means to prevent falling in the river, and to provide means for rescue.

summary judgment in its favor, "on the ground that the pleadings, the admissions, the interrogatories and the certified copy of contract marked Exhibit A, and attached to plaintiffs' requests for admissions, show that the defendant is entitled to judgment as a matter of law." As indicated, this motion was granted and the judgment appealed from was entered thereon.

The motion was predicated upon the contention of the defendant, appellee here, that it was an "employer" within the meaning of the Idaho Workmen's Compensation law, Idaho Code §§ 72–101 to 72–1103, under which the rights and remedies of an employee against his employer for personal injury are confined to those provided by the Act which excludes all other rights and remedies of the employee, his dependents or next of kin.[2] The contention was that even if the United States was not actually covered by the Workmen's Compensation Act,[3] yet the situation of the defendant here and the work being done by it, were such that, had defendant been a private party, it would then be an "employer" as defined in the Act. The position of the defendant was that it was not liable under the Tort Claims Act except "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred", Title 28 § 1346 (b), and only "in the same manner and to the same extent as a private individual under like circumstances"; Title 28 § 2674,[4] and that if it had been a private person doing what it did here, it would, as such an "employer" have been excused from any liability under the common law or the wrongful death statute by reason of the Workmen's Compensation Act. So it says it cannot be liable here.

In order to test this defense, which the trial court sustained, it is necessary that we summarize the facts and examine the language of the State statute upon which defendant relied. The facts disclosed by its own admissions and responses to interrogatories and requests for admissions,[5] are that the dam and works referred to were being constructed upon property belonging to the United States under contract let to the general contractors mentioned. The defendant was represented at the dam by a project engineer who had been appointed by a district engineer of the Corps of Engineers. Under him was a civilian employee who was an inspector, but who was not acting "in any overseeing capacity" of the work being performed by the contractors' employees. Also stated in its response to plaintiffs' interroga-

2. "§ 72–203. Right to compensation exclusive.—The rights and remedies herein granted to an employee on account of a personal injury for which he is entitled to compensation under this act shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury. * * *"

3. The Code, § 72–103, lists public employment to which the Act applies. Included are employees and officials of the State, counties, cities, school districts, irrigation districts, etc. The United States is not named.

4. "§ 1346(b) * * * the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

"§ 2674. The United States shall be liable * * * in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

5. We shall have occasion, infra, to note certain respects in which the plaintiffs' complaint differed from defendant's version of the facts, and to the effort of plaintiffs to amend their complaint to conform to defendant's version.

tory No. 1 is the following: "No officer or employee of the Defendant had general management or control of the actual construction of the control tower of Lucky Peak Dam in May, 1953. The work was being performed by Russ Mitchell, Inc., a Texas Corporation, and H. B. Bruce, an individual trading as Bruce Construction Company, address: P. O. Box 1562, Boise, Idaho, under Contract No. DA-45-164-eng-2200 and those companies had such general management and control of the construction work." Later in the same answers to interrogatories it is stated that "the design, specifications, and plans for the completed work * * * had been prepared by the Corps of Engineers, Department of the Army." A similar statement in plaintiffs' requests for admissions was admitted by the defendant.

We are of the opinion therefore that it sufficiently appears from these sources that the Government, as proprietor thereof, was interested in the construction of a flood control project, the plans for which it had designed, and that the actual work thereon was being done by the independent contractors under contract let to them.[5a]

Turning to the Idaho Workmen's Compensation Act, it is important to notice, in addition to § 72–203, quoted supra, note 2, the following sections:

"72–811. Contractors and subcontractors.—An employer subject to the provisions of this act, shall be liable for compensation to an employee of a contractor or subcontractor under him or who has not complied with the provisions of section 72–801 in any case where such employer would have been liable for compensation if such employee had been working directly for such employer. The contractor or subcontractor shall also be liable for such compensation, but the employee shall not recover compensation for the same injury from more than one party. * * *"

"72–1010. Employer.—'Employer,' unless otherwise stated, includes any body of persons, corporate or unincorporated, public or private, and the legal representative of a deceased employer. It includes the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor, or for any other reason, is not the direct employer of the workmen there employed. If the employer is secured it includes his surety so far as applicable."

"72–105a. Employments not covered.—None of the provisions of this act shall apply to the following employments, unless coverage thereof is elected as provided in section 72–105b:

"1. Agricultural pursuits. Agricultural pursuits, as used herein, shall include the care-taking and handling of livestock on enclosed lands and public ranges.

"2. Household domestic service.

"3. Casual employment.

"4. Employment by charitable organizations.

"5. Employment of outworkers.

"6. Employment of members of employer's family dwelling in his household.

"7. Employment of airmen or individuals, including the person in command and any pilot, mechanic or member of the crew, engaged in the navigation of aircraft while under way.

"8. Employment which is not carried on by the employer for the sake of pecuniary gain."

"72–204. Liability of third persons.—When an injury for which

5a. It would appear that this was a flood control project of the kind described in Title 33 U.S.C.A. § 701b.

compensation is payable under this act shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may, at his option, either claim compensation under this act or obtain damages from or proceed at law against such other person to recover damages; and if compensation is claimed and awarded under this act any employer having paid the compensation or having become liable therefor shall be subrogated to the rights of the injured employee to recover against that person: provided, if the employer shall recover from such other person damages in excess of the compensation already paid or awarded to be paid under this act, then any such excess shall be paid to the injured employee less the employer's expenses and costs of action."

We note that under that Act the person who is liable for the compensation therein provided for is the "employer subject to the provisions of this act,"—§ 72–811. It is this "employer" who by virtue of § 72–203 is exempt from the ordinary action or suit for negligence. Gifford v. Nottingham, 68 Idaho 330, 193 P.2d 831. But nothing in the Act exempts any other persons, that is to say, persons who are not "employers", from actions for damages for negligence. Such actions may be brought, in the language of § 72–204, when the injury has been sustained in "circumstances creating in some other person than the employer a legal liability to pay damages." This right to sue to recover for the negligence of any person who is not an "employer" under the Act "was not abolished" by the Idaho Act, and the common law action may be maintained notwithstanding the plaintiff may have collected compensation under the Act from his employer. Lebak v. Nelson, 62 Idaho 96, 107 P.2d 1054, 1061. The liability of the employer for compensation under the Act "is a separate and distinct liability from that of the third party tort-feasor for damages." Lake v. State, 71 Idaho 107, 110, 227 P.2d 361, 363. And although § 72–204 gives the employer a right to claim subrogation to the injured employee's recovery against the third person, that right does not stand in the way of an independent action by the injured employee, Lebak v. Nelson, supra, particularly where the employer makes no effort to intervene in the action, Lake v. State, supra. The Idaho Supreme Court has been careful to note that the Workmen's Compensation Act should not be extended by construction to abrogate the common law action for negligence against one not an employer as defined in the act. Brown v. Arrington Const. Co., 74 Idaho 338, 262 P.2d 789.

Perhaps the most conclusive reason why the United States is not actually an "employer" within the meaning of the Idaho Act is that there is no provision therein which would define it as such. See note 3, supra. As we have indicated, however, the appellee, without asserting that the United States is by the terms of the Act listed as an employer thereunder, says that the question here is whether if the United States were a private person it would then be an "employer" under the Act, calling attention to the references in Title 28 §§ 1346(b) and 2674, to the requirement that the acts or omissions there mentioned must have been "under circumstances where the United States, if a private person, would be liable", and to the provision that the United States is liable "in the same manner and to the same extent as a private individual under like circumstances."

In making inquiry then as to whether if the United States under the circumstances of this case were a private person it would be an "employer" under the Act, we note of course that it is not likely that a private person would be engaged in a flood control project of the character of this one. That circumstance of course does not exclude the United States from liability even if these were activities which private persons do

not perform. Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 124, decided November 21, 1955. As there pointed out, the language used is " 'under *like* circumstances.' " (Emphasis ours.) As stated by Judge Roche in Cerri v. United States, D.C., 80 F. Supp. 831, 833, this is not to be understood to mean that "the United States can be sued only if a private person can be sued under the *identical* circumstances."[6] (Emphasis ours.)

We think it cannot be said that if the United States were, under these circumstances, a private party, it would be an "employer" under the Act. If it could be conceived that a private person were constructing a dam as was the United States merely for the good of the public generally and not for profit, then such person would come within the exemption of subdivision 8 of § 72–105a—"employment which is not carried on by the employer for the sake of pecuniary gain."[7]

■ Perhaps the most numerous types of persons in the State of Idaho likely to be constructing dams would be farmers or groups of farmers building dams and other irrigation works to provide the artificial application of water to arid lands. Such enterprises come within the definition of "agricultural pursuits", also exempt under § 72–105a. Big Wood Canal Co. v. Unemployment Compensation Division, 61 Idaho 247, 253, 100 P. 2d 49. If such a farmer, exempt under the Act, were guilty of negligence while his dam was under construction by an independent contractor, and if that negligence caused death or injuries to the contractor's employee, an action would lie against the farmer. So in the case of the suppositious private corporation, such perhaps as a church, operating not for the sake of pecuniary gain, exempt

under subdivision 8, supra. Both of these are instances presenting *like* circumstances within the meaning of Title 28 § 2674. Both supply an answer to the important inquiry as to whether there is an "analogous liability" in the law of torts.[8] There is.

■ Hereafter we shall allude to the plaintiffs' attempt to amend their complaint so as to make it conform to the facts as defendant asserted them to be. If we take the facts here as defendant's answers to interrogatories pictured them, defendant was not actually building or constructing the dam itself. It had let a contract to general contractors for that purpose. With that state of facts in mind, we find in the Idaho Act, and the decisions construing it, a conclusive reason why the United States, or a private person in its position, could not be an "employer" under the Act. § 72–1010 provides that "employer" under the Act "includes the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on." This is limited to the owner who is the "operator of the business there carried on." It does not make every owner or lessee of premises an employer. It makes such owner the employer when he is carrying on a business there. Thus the Supreme Court of Idaho has held that a physician who owned a lot and let a contract to a builder for the erection of a residence thereon was not an "employer" of a laborer hired by the builder to work on the construction job. Moon v. Ervin, 64 Idaho 464, 133 P.2d 933. The reason was that if it is sought to hold one as an employer in a situation of this kind, it must be shown that such person was the proprietor or operator of some business there carried on. Following that case, that court held

---

6. The Cerri case was cited with approval in Air Transport Associates v. United States, 9 Cir., 221 F.2d 467, 470.

7. We note that persons in occupations exempt under § 72–105a, may elect to come within the Act under § 72–105b. It would appear that certain activities of the State, or of its subdivisions, would be of the

character listed as exempt in § 72–105a. However, by § 72–103, the State has elected to place itself and its subdivisions under the Act.

8. See Indian Towing Co. v. United States, supra, footnote 4 in that case. Cf. Feres v. United States, 340 U.S. 135, 141, 71 S.Ct. 153, 95 L.Ed. 152.

that when the City of Pocatello let a contract to a general contractor for the construction of certain sewers in the city, the general contractor, not the city, was the "employer" of a person hired by subcontractors who was killed while working on the sewer trench. Gifford v. Nottingham, supra. It seems clear that the United States in this case occupied a position analogous to that of the physician in Moon v. Ervin, and to that of the City in Gifford v. Nottingham. See also McGee v. Koontz, 70 Idaho 507, 223 P.2d 686. We think that the teaching of those two cases is that the United States could not be said, within the meaning of § 72–1010, to be "virtually the proprietor or operator of the business there carried on." It was not carrying on a business.

What adds to our confidence that nothing contained in the Idaho Workmen's Compensation Act furnishes any defense in this case, is the fact that the Act has been continued without change in an authorized code compilation since the enactment of the Tort Claims Act.[9] It seems improbable that the Idaho legislature could have intended that the Idaho Act should extend immunity to the United States in cases of this character. Paraphrasing the language used by the Idaho court in Brown v. Arrington Const. Co., supra [74 Idaho 338, 262 P.2d 795], we think that the Idaho statute should not be extended by construction to abrogate what would otherwise be a plain cause of action against the United States since "the statute does not expressly so provide or necessarily so imply."

The complaint originally filed in the court below contains some allegations relating to the control, dominion and authority which the United States was exercising with respect to the dam and its construction at the time of the accident, which were expressly denied and controverted in defendant's answers to interrogatories and in its response to requests for admissions. Thus the complaint stated "that said Lucky Peak Dam, the control works and the land occupied thereby, were in the possession of and under the control, dominion and authority of said defendant, the United States of America." It also alleged that a certain named government employee "was present and supervising the work."

It is an interesting circumstance that the defendant's motion for summary judgment was based in part upon its answers to interrogatories and the certified copy of the contract. All of these documents disclose, as previously indicated, and as stated in the defendant's own response to requests for admission, that "no officer or employee of the defendant had general management or control of the actual construction of the control tower of Lucky Peak Dam in May, 1953," and that the work was being performed under contract by the general contractors mentioned who "had such general management and control of the construction work."

On September 20, 1954, the trial court filed an opinion which quoted largely from the complaint with emphasis upon the reference to the " 'control, dominion and authority' " of the United States, but made no specific reference to the above version of the facts disclosed by the defendant itself.[10] The opinion directed counsel for the defendant to prepare findings of fact, conclusions and form of summary judgment to be served upon opposing counsel and submitted to the court for approval. The following day, September 21, plaintiffs filed their motion for leave to file an amended complaint, attaching copy of the complaint as proposed to be amended. In the amended complaint the allegations of " 'control, dominion and authority' "

9. The Idaho Code, compiled pursuant to Chap. 224 of 1947 Session Laws, was by authority of Chap. 167 of 1949 Session Laws, proclaimed by the Governor on April 22, 1949, to be "in full force and effect and shall be received in all courts * * * and all others as evidence of the statute law of the State of Idaho."

10. The opinion is reported at 124 F.Supp. 233, 235.

were deleted as was also the allegation that the government employee was " 'supervising the work' ". It added a new allegation of the execution of the contract referred to in defendant's answer to interrogatories, and substituted for the former allegation of control, etc., the allegation that the land on which the dam was being constructed was "in the possession of and owned by" the defendant. The court denied the plaintiffs' application for leave to file the amended complaint.

Defendant has never filed an answer. At the time the application for leave to amend was made and the proposed amended complaint tendered, no order upon the motion for summary judgment had been made although the court had by opinion expressed its intention to grant the motion. In Rogers v. Girard Trust Co., 159 F.2d 239, the Court of Appeals of the Sixth Circuit, held that a motion for summary judgment was not a responsive pleading within the meaning of Rule 15(a) of the Federal Rules of Civil Procedure, 28 U.S.C. A., and hence that a party against whom such a motion had been made continued to have the right to amend as a matter of course. There, as here, leave to amend was asked and the court held that leave of the district court was not necessary but that it was error to deny same when requested.[11] But even if leave of court to amend were required, we are of the opinion that under the circumstances of this case it was an abuse of discretion for the trial court to deny plaintiffs such leave. After all, the plaintiffs were seeking no more than to make the complaint conform in these respects with the assertions made by the defendant itself in its own answers to interrogatories and responses to requests for admissions. For the court to say: No, you pleaded it that way the first time and although it is admitted by the defendant that the facts are otherwise, yet you will be held to your original allegation, seems to us to be wholly unwarranted and a ruling operating to avoid ascertaining the true facts in the case.

The injunction of rule 15(a) with respect to applications for leave to amend pleadings is: "And leave shall be freely given when justice so requires." In Rossiter v. Vogel, 2 Cir., 134 F.2d 908, 912, it was held error for the court to proceed to enter a summary judgment after showing had been made which would justify an amendment of the pleadings. Here the strongest possible showing for amendment was supplied by the defendant's own answers to interrogatories. The refusal to permit such an amendment in itself constituted reversible error.

We hold that there was no basis for the trial court's holding that the provisions of the Idaho Workmen's Compensation Act furnished the defendant with a defense to this action. Under the provisions of that Act plaintiffs had the right to sue the defendant for negligence in the same manner in which the Idaho courts have held that an injured employee may sue a third person, one not an "employer" under the Act, as at common law or under the wrongful death statute.

The judgment is reversed and the cause is remanded with directions to permit the requested amendment of the complaint, and to require the defendant to answer thereto, and to proceed with the trial of the cause upon the merits.

11. Although there have been some district court decisions to the contrary, the Rogers case is said by Mr. Moore to present the proper view. See Moore's Federal Practice, 2nd ed., §§ 56.10 and 15.07.