**Robert RAY, Appellant,**

v.

**MONSANTO COMPANY, a corporation, Appellee.**

**No. 23107.**

United States Court of Appeals
Ninth Circuit.

Jan. 5, 1970.

Rehearing Denied Feb. 5, 1970.

R. Max Whittier, of Whittier, McDougall & Dwyer, Pocatello, Idaho, for appellant.

Ben Peterson, of Baun & Peterson, Pocatello, Idaho, for appellee.

Before HAMLEY and BROWNING, Circuit Judges, and REAL, District Judge*

---

* The Honorable Manuel Real, United States District Judge for the Central District of California, sitting by designation.

HAMLEY, Circuit Judge:

In this diversity suit arising in Idaho, Robert Ray sought damages from Monsanto Company for personal injuries sustained in a construction accident. Monsanto moved for a summary judgment on the ground that, as a statutory employer of Ray under the Workmen's Compensation laws of Idaho (Act), it was immune from such a tort action. The district court granted summary judgment for Monsanto, and Ray appeals.

Monsanto owns and operates phosphate production facilities at Soda Springs, Idaho. It contracted with Tellepsen Construction Company (Tellepsen) to build a large furnace for the production of phosphorus. The construction took place on Monsanto property adjacent to the existing Soda Springs facilities. Ray, an employee of Tellepsen, was injured on March 1, 1969, when an improperly matched bolt and nut connection gave way under tension. Ray alleged that the mismatch occurred due to Monsanto's negligence in furnishing the parts and in failing to follow the design for installing them in the new furnace.

If Monsanto was the statutory employer of Ray under the terms of the Act, it is immune from this common law damage action. IDAHO CODE ch. 2, § 72–203 (1917). On the other hand, if Monsanto was not Ray's statutory employer, it was not immune from such a suit. IDAHO CODE ch. 2, § 72–204 (1917); Kirk v. United States, 232 F.2d

763, 767 (9th Cir. 1956). The Act defines the term "employer" as follows:

"Employer.—'Employer,' unless otherwise stated, includes any body of persons, corporate or unincorporated, public or private, and the legal representative of a deceased employer. It includes the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor, or for any other reason, is not the direct employer of the workmen there employed. If the employer is secured it includes his surety so far as applicable." IDAHO CODE ch. 10, 72–1010 (1917)

Monsanto concedes that it was not Ray's direct employer on the day in question. Although Ray was working on Monsanto's property, his direct employer was the contractor for the job, Tellepsen. Nevertheless Monsanto moved for summary judgment on the ground that it was "virtually the proprietor or operator of the business there carried on * * *" within the meaning of section 72–1010, quoted above. The three reasons the district court gave in agreeing with this contention provide the focal points for the principal arguments on this appeal.

1. *The Language of Section 72–1010*

The first such reason was that the language of section 72–1010, quoted above, read in the light of certain observations made by the Supreme Court of Idaho in Gifford v. Nottingham, 68 Idaho 330, 193 P.2d 831 (1948), requires this result. These observations are quoted in the margin.[1]

---

[1]. The Idaho court said:

"Undoubtedly one object of the statute in making the operator of the business liable for workmen's compensation, was to afford full protection to workmen by preventing the operator or contractor avoiding [sic] liability under the workmen's compensation act by subcontracting work to others who might be irresponsible. The effect of our law, under our decisions, is to make the principal contractor or operator liable the same as if he had directly hired the employees for the work which he is carrying on. The relation thus established is purely statutory. The legislature for the purpose of the compensation act created the relation of employer and employee between independent groups who never before had borne, and who do not now under the common law bear that relation to each other. It forces liability upon parties who are not in privity of contract." 193 P.2d at 835.

The district court apparently thought that Monsanto occupied the same position as the "contractor" or "principal contractor" referred to in the quoted language. Under that assumption it would necessarily follow that Monsanto must be regarded as the statutory employer of Ray.

However, neither *Gifford* nor the other cases disclosed below hold that section 72–1010 is to be construed to mean that all owners or lessees are statutory employers of the employees of general contractors and subcontractors working on their property. Only those owners and lessees who are "virtually the proprietor or operator" of the construction work are to be so regarded. Monsanto's reading of the quoted *Gifford* language, accepted by the district court, would in effect eliminate the "virtually the proprietor or operator" element of the statutory definition.

Consideration of the *Gifford* language in light of the facts of that case indicate that the Idaho court did not intend any such emasculation of the statutory definition. Its reference in that opinion to "contractor" and "principal contractor" was intended to designate not the owner but the general contractor engaged by the owner to construct facilities with the aid of subcontractors. Moreover, the actual holding in *Gifford* is completely adverse to the position taken here by Monsanto.

In *Gifford*, a general contractor, Nottingham, was engaged by the City of Pocatello, which owned and operated a municipal sewer system, to construct sewers on lands owned by the city. Nottingham engaged Grayson and Horner as subcontractors to dig pipe trenches for the sewers. One of the subcontractor's employees, Gifford, was killed in an accident during the course of his employment. Gifford's parents brought an action for wrongful death against Nottingham, but not against the City of Pocatello. Nottingham argued that he was a statutory employer and was therefore immune from suit.

The *Gifford* trial court gave judgment for plaintiffs, holding that Nottingham was not a statutory employer. On appeal plaintiffs defended this holding on the ground that the City of Pocatello, and not Nottingham, was Gifford's statutory employer. The Idaho Supreme Court reversed, stating that plaintiffs' contention conflicted directly with prior Idaho authority. The court went on to say:

"Nottingham as the principal contractor was the operator of the business being carried on, to wit, the construction of the sewer system." 193 P.2d at 835.

Thus the Idaho court held that Nottingham, as the general contractor, was the operator of the business at issue (construction of sewers), even though the City of Pocatello owned and operated the sewer system. It is difficult to see why, on that reasoning, Tellepsen is not "the operator of the business there being carried on" (construction of the furnace) in the case before us, notwithstanding Monsanto's ownership and operation of the phosphate plant of which the furnace was to become a part.

## 2. *Supervisory Control by Monsanto*

The second reason given for granting summary judgment for Monsanto was that while on the surface Moon v. Ervin, 64 Idaho 464, 133 P.2d 933 (1943), Gifford v. Nottingham, *supra,* and Kirk v. United States, 232 F.2d 763 (9th Cir. 1956) are analogous to the present case and are precedent for a holding that Monsanto was not the statutory employer of Ray, there is an essential fact distinction which calls for a different result here. The district court reasoned that the property owners in each of the above three cases had no direct supervisory control over the parties with whom they had contracted to perform specified services, whereas in the present case the contract gave Monsanto direct supervisory control over Tellepsen's construction operation.

From our own review of these cases we conclude that this distinction, if it in fact exists, does not support a different result. In *Moon,* the plaintiff was injured while employed as a workman by a construction contractor, Ervin, who was building a private residence for Dr. Eugene Schreiber. The court affirmed a determination that Schreiber was not Moon's statutory employer. The court held that the business "there carried on" was the construction business and that Schreiber was not virtually the proprietor or operator of that business, although he was the owner of the premises upon which the building was being built.

While, in *Moon,* the court noted that the workman did not receive instructions from anyone other than the contractor Ervin, this observation was made only with reference to the question whether the workman was the employee of Ervin or Schreiber. The court in *Moon* did not refer to the matter of supervision as a test to be applied in determining whether Schreiber was, under section 72–1010, "virtually the proprietor or operator" of Ervin's construction business.

In the *Gifford* opinion, discussed at length above, we find no significant discussion of the matter of supervision.

In Kirk v. United States, 232 F.2d 763 (9th Cir. 1956), a scaffold gave way, killing a workman employed by general contractors engaged in constructing a dam for the United States. The workman's widow and child brought an action for wrongful death against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2674–2680. The Government first pointed out that under that act it is liable only "in the same manner and to the same extent as a private individual under like circumstances. * * *" The Government then asserted that, on the established facts of that case, a private citizen would be a statutory employer under section 72–1010.

The district court agreed, holding that under the same circumstances a private citizen would have been a statutory employer. This court reversed, saying:

> "It seems clear that the United States in this case occupied a position analogous to that of the physician in Moon v. Ervin, and to that of the City in Gifford v. Nottingham." 232 F.2d at 769.

There are observations in the *Kirk* opinion to the effect that the Government did not have general management and control of the actual construction. However we do not believe that they were intended as a reason for holding that the Government was not virtually the proprietor or operator of the dam construction business there in progress. Rather, these observations were apparently intended only as general background information, or as establishing that the Government was not chargeable with direct negligence which was a proximate cause of the accident. As indicated by the quoted language from the *Kirk* opinion, the holding that the Government was not the statutory employer of the injured workman was based principally on prior Idaho decisions in which the matter of supervision was not a controlling factor.[2]

In addition to what is said above, it is appropriate to note that, in the case now before us, Monsanto did not reserve for itself supervisory control which is out of character with the normal arrangement where an owner engages a contractor to

2. It should be observed that, quite apart from the fact that none of these three cases support the view that the matter of supervision is a significant factor in determining whether one who contracts for the construction of facilities is a statutory employer, all three of the cases reach a result generally contrary to that of the judgment under review. Each of these cases stands for the proposition that, where the owner of land engages an independent contractor to construct a building or other facility on the owner's land, the "business there carried on" under section 72–1010 is the construction business, and the independent contractor rather than the owner is "virtually the proprietor or operator" of that business.

construct facilities on the owner's property. The supervisory rights reserved to Monsanto under the contract here in question are summarized in the margin.[3] In general these rights relate to matters over which an owner ordinarily exercises a considerable amount of supervision without intending to assume proprietary or operating control of the independent contractor's construction business.

Acceptance of the owner's interpretation of the specifications, quality control over the materials used, workmanlike performance, time requirements, and safety standards are legitimate concerns of an owner even though the contractor is, and remains an independent business concern. Employment by the contractor of competent supervisory and working personnel is germane to those legitimate interests. A requirement that the contractor cooperate with the owner in the latter's effort to keep a watchful eye on the work is appropriate and proper notwithstanding the builder's status as an independent contractor.

In summary, supervisory control of this kind does not, in our opinion, transpose what would ordinarily be the construction business of an independent contractor into the business of the owner. Nor does it vest in the owner a proprietary interest in, or operating control of, that construction business. We therefore conclude that the supervisory rights which Monsanto reserved under its contract with Tellepsen, and which we assume Monsanto exercised,[4] did not make Monsanto the proprietor or operator of the construction business carried on by Tellepsen.

### 3. The Beedy Case

The third reason given for granting summary judgment for Monsanto was that the decision of this court in Beedy v. Washington Water Power Co., 238 F.2d 123 (9th Cir.1956), dictated this result. In *Beedy*, Washington Water Power Co. (utility company) engaged an independent contractor, Lewis Construction Company (contractor) to replace electrical conductors running from the company's substation at Government Gulch, across lands owned by the utility company, to the company's substation at Burke, Idaho. Beedy, an employee of the contractor, was electrocuted while assisting in the installation of these lines.

Beedy's widow and daughter brought an action for wrongful death against the utility company. One of that company's defenses was that it was the statutory employer of Beedy under section 72–1010, and was therefore immune from such a suit. The district court granted summary judgment for the defendant, and we affirmed.

3. As noted by the district court, the contract provides that Monsanto's representative on the job site, designated "engineer," "shall have general supervision and direction of the Work." He was given the "authority to stop the Work whenever such stoppage may be necessary to insure the proper execution of the Work * * *." The engineer was the "interpreter of the Specifications and Drawings and the judge of the performance of the work." It was the engineer's duty to make decisions on all claims, disputes and other matters relating to the execution and progress of the work.

The contract also provided that Tellepsen was to enforce the engineer's instructions regarding safe working practices, signs, advertisements, fines, smoking and the like. Tellepsen was required, upon notice from the engineer, to remove from the work any employee objectionable to Monsanto because of his carelessness, incompetence, lack of skill in his trade, or other reasonable cause. Monsanto had the right to terminate the "employment" of Tellepsen should that company "persistently disregard laws, ordinances or instructions of the engineer. * * *" Tellepsen's superintendent and his assistants had to be satisfactory to the engineer. Tellepsen could not change superintendents except with the consent of the engineer, unless the superintendent proved to be unsatisfactory to Tellepsen and ceased to be in its employ. All directions given to the superintendent were binding upon Tellepsen.

4. Ray argues that there is a genuine issue of fact as to this.

We quote in the margin certain language in the *Beedy* opinion which the district court relied upon in holding in favor of Monsanto.[5] It is difficult to reconcile some of this language with the above-described holdings in *Kirk* and *Gifford*. On the surface, it would seem that the dam under construction in *Kirk* was as necessary and important a part of the hydroelectric operations of the United States as the electrical conductors under construction in *Beedy* were to the electric transmission and distribution operation of the utility company. Likewise it would seem that the sewers under construction in *Gifford* were a necessary and important part of the City of Pocatello's sewer system.[6]

However, we need not decide whether this court should continue to adhere to the broad observations expressed in *Beedy*. There were special circumstances in that case which adequately account for the result reached there and which distinguish it from the facts of the present case.

In *Beedy*, the utility company was, at the time of the accident, operating another electric power line at the exact place where the accident occurred.[7] Furthermore, the construction carried on there by the contractor was not of a new facility, but involved the replacement of existing electrical conductors. Also, as this court twice emphasized in that opinion, the utility company normally constructed and repaired its own lines; it only contracted out such work when its own employees were unable to perform the work. The combination of these special circumstances in *Beedy* are enough, we think, to categorize the utility company as Beedy's statutory employer, quite apart from the fact (common to both the *Beedy* case and our case) that the project, when completed, would

---

5. "Appellants want us to read into the statutory words 'the business there carried on' the qualification that the *particular* business there carried on must be *the* business the proprietor or lessee does for others for hire. In other words, appellants argue that in order to say the Power Company is an 'employer' in the instant case, we must find that the Power Company was in the business of reconductoring transmission lines for others for pecuniary gain.

"We find this contention without merit. To agree with appellants would be to void a vital part of the Act as passed by the Idaho Legislature. The purpose of the Act was to cover such a situation as presented by the instant case.

"All that need be shown is that the employee was injured while performing work pertaining to the business, trade or occupation of the Power Company carried on by it for pecuniary gain. Fisk v. Bonner Tie Co., 40 Idaho 304, 232 P. 569; Gifford v. Nottingham, [68 Idaho 330] 193 P.2d 831; Kirk v. United States, 9 Cir. 1956, 232 F.2d 763.
\* \* \* \* \* \*
"And, as we have previously stated, it need not be shown that the one particular activity involved was in itself being carried on for profit. It need be shown only that the activity was a necessary and important part of the commercial functions of the principal employer's business. The activity here involved was clearly an integral part of the main business of the Power Company." 238 F.2d at 126, 127.

6. It is true that the hydroelectric system in *Kirk* and the sewer system in *Gifford* were not operated as commercial businesses. But we find nothing in the Act which indicates that the term "business" as used in section 72–1010 means only a commercial business. Such a construction would defeat the legislative purpose to provide industrial insurance protection to Idaho workmen generally. Moreover, the first sentence of section 72–1010 provides: "'Employer,' unless otherwise stated, includes any body of persons, corporate or unincorporated, public or private \* \* \*."

This specific inclusion of public bodies would be defeated if a unit of government were held not to be a statutory employer because it does not engage in commercial business. In addition, since the Federal Tort Claims Act was involved in *Kirk*, the test necessarily applied there was whether a private individual under like circumstances would have been liable.

7. The electrical conductors were being installed across and above a 13,000-volt electric power line then owned, operated, and energized by the utility company. Beedy's death occurred when a winch on a truck used in the conductor installation came into contact with the existing 13,000-volt power line.

be a necessary and important part of the defendant's entire operation.

No analogous circumstances exist in this case now under consideration. The furnace under construction when plaintiff was injured was a major new addition to the Monsanto plant, and there is no showing that Monsanto normally does this kind of construction. We therefore conclude that *Beedy* is distinguishable on the facts and does not require the granting of summary judgment for Monsanto in this case.

Having considered all of the reasons relied upon in granting summary judgment for Monsanto, and having determined that none of them is sufficient to support that action, we conclude that the summary judgment must be set aside. It is therefore unnecessary to consider Ray's other arguments, substantive and procedural, urging reversal of the judgment.

Reversed and remanded for further proceedings consistent with this opinion.

REAL, District Judge (dissenting):

The majority opinion finds more comparison in the cases of Moon v. Ervin, 64 Idaho 464, 133 P.2d 933 (1943), Gifford v. Nottingham, 68 Idaho 330, 193 P.2d 831 (1948) and Kirk v. United States, 232 F.2d 763 (9th Cir.1956) than in Beedy v. Washington Water Power Co., 238 F.2d 123 (9th Cir.1956). I find the comparisons strained. The special circumstances in *Beedy* (supra) are aided here by the degree of control exercised by Monsanto over the work of the independent contractor.

Here, as in *Beedy* (supra) there is an independent contractor *adding* to existing facilities. The end result—a necessary and important part of the defendant's entire operation—is indistinguishable. The language of *Beedy* is here apposite:

"[A]ll that need be shown is that the employee was injured while performing work pertaining to the business, trade or occupation of the Power Company carried on by it for pecuniary gain. Fisk v. Bonner Tie Co., 40 Idaho 304, 232 P. 569; Gifford v. Nottingham, [68 Idaho 330], 193 P. 2d 831; Kirk v. United States, 9 Cir., 1956, 232 F.2d 763. The Power Company was admittedly engaged in the manufacture, transportation, delivery, and sale of electricity. And the reconductoring of its transmission lines is not work separate and distinct from the regular business carried on by the Power Company."

Monsanto was adding to its production capacity. These circumstances together with the aspects of control discussed by the district court compel the conclusion that it is "virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor, or for any other reason, is not the direct employer of the workmen there employed." This language connotes something less than *actual* ownership or *actual* operation which the majority opinion would require.

I would affirm the judgment.