**Patricia M. LETNES, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 86–1771.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 16, 1987.

Decided July 7, 1987.

Barbara B. O'Malley, Washington, D.C., for defendant-appellant.

Bruce S. Osterman, San Francisco, Cal., for plaintiff-appellee.

Before ANDERSON, SKOPIL and CANBY, Circuit Judges.

CANBY, Circuit Judge:

On December 2, 1980 two aircraft collided in the airspace between Indio and Palm Springs, California. One plane was able to land safely at Palm Springs airport. The other plane crashed in the desert, killing pilot Clyde Alford and copilot Ronald Letnes. Both planes were owned by Waig

Aircraft and were based in Tucson, Arizona. Waig had contracted with the Forest Service to carry and drop liquid fire retardant on forest and range fires. At the time of the collision, the planes were returning to Tucson after assisting in extinguishing a fire near Hemet, California. Patricia M. Letnes, spouse of the deceased copilot, filed an action against the United States under the Federal Tort Claims Act. The complaint alleged negligence of Waig's pilots. On competing motions for summary judgment, the district court found that Waig's employees were employees of the government and granted the Letnes' motion for summary judgment on the issue of liability. After a trial on the issues of comparative negligence and damages, the court found the decedent to be neither negligent nor responsible for the accident and entered judgment in favor of Letnes in the amount of $550,939, with interest from the date of judgment until paid. We find that Waig's employees were not employees of the government for purposes of the Federal Tort Claims Act. We therefore remand to allow the district court to vacate its judgment and dismiss for lack of jurisdiction.

The government contends that there was no waiver of sovereign immunity under the facts of this case, that Letnes' motion for summary judgment was improperly granted, and that the government's motion was improperly denied.[1] We review grants and denials of summary judgment motions de novo. *Lojek v. Thomas*, 716 F.2d 675, 677 (9th Cir.1983).

■ The Federal Tort Claims Act is a limited waiver of sovereign immunity. The Act permits the United States to be sued for the negligence of its employees. 28 U.S.C. § 1346(b). The government may also be sued for the actions of a government contractor and its employees if the government has the authority "to control the detailed physical performance of the contractor" and supervise its "day-to-day operations." *United States v. Orleans*, 425 U.S. 807, 814–15, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976) (quoting *Logue v. United States*, 412 U.S. 521, 528, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973). If the Forest Service had no authority to supervise and control the detailed daily operations of Waig's employees, then there was no waiver of sovereign immunity and the district court lacked jurisdiction to decide the case.

This is not a case of first impression. Once before this court was required to determine whether a pilot who had entered into a contract with the Forest Service was a government employee or an independent contractor. *United States v. Becker*, 378 F.2d 319 (9th Cir.1967). In *Becker*, the district court had applied federal law and arrived at the ultimate finding that the pilot was serving as an employee of the United States when the plane crashed. The district court relied on the following evidence to support its conclusion: (1) the pilot and plane were selected on the basis of an elaborate testing procedure, rather than by means of competitive bidding; (2) the Forest Service specified the pilot's home base; (3) the pilot was paid an hourly rate; and (4) the Fire Control Officer was in charge and told the pilot "when and where to go and what to do." *Becker*, 378 F.2d at 322–23. On appeal this court affirmed. We said that the pilot "operated under the detailed control and direction of the Forest Service, as manifested by Forest Service regulations which were binding upon him, and through specific directions given to him by the Fire Control Officer." *Becker*, 378 F.2d at 322.

Letnes contends that *Becker* should control because of the factual similarities between it and the present case. Letnes, however, fails to appreciate the extent to which *Becker* has been weakened by subsequent Supreme Court pronouncements.

---

1. The government also challenges the date from which interest on the judgment shall accrue. The relevant statute provides that interest runs from the date of filing the transcript of judgment with the Comptroller General through the day before the date of the mandate of affirmance. *See* 31 U.S.C. § 1304(b)(1) and *DeLucca v. United States*, 670 F.2d 843, 846 (9th Cir. 1982). Because we find that Waig's pilots were not federal employees, we do not reach this issue.

The Court has indicated that detailed regulations and inspections are no longer evidence of an employee relationship. *See Orleans,* 425 U.S. at 815, 96 S.Ct. at 1976; *Logue,* 412 U.S. at 529–30, 93 S.Ct. at 2220. In interpreting *Logue* and *Orleans,* our court has said that the ability to compel compliance with federal regulation does not change a contractor's personnel into federal employees. *Ducey v. United States,* 713 F.2d 504, 516 (9th Cir.1983). *See also Lurch v. United States,* 719 F.2d 333, 337 (10th Cir.1983), *cert. denied,* 466 U.S. 927, 104 S.Ct. 1710, 80 L.Ed.2d 182 (1984). There must be substantial supervision over the day-to-day operations of the contractor in order to find that the individual was acting as a government employee. *Ducey,* 713 F.2d at 516.

■ The district court erred in finding that Waig's pilots were Forest Service employees. Most of the contractual provisions referred to by the district court as indicia of employee status are "the sort of regulation-mandated contractual restrictions described in *Orleans* that are designed to secure federal objectives and that, despite their restrictive effect on the activities of the contracting party, do not convert an independent entrepreneur into an 'agent' of the federal government." *Ducey,* 713 F.2d at 516. The district court noted that the contract included maximum operating periods between maintenance, weighing and balancing requirements, engine overhaul procedures, and extensive and detailed equipment provisions including requirements for flashlight batteries, bandages, and exterior markings on the plane. All of these provisions are prescribed by the Federal Aviation Administration. *See* 14 C.F.R. §§ 91.165–91.215, §§ 23.21–23.33, § 135.159 and § 121, Appendix A (1987). These provisions are designed to secure minimum safety, not to control the detailed physical operation of the plane. Other contract provisions requiring pilot certification, maximum work hours, and inspections are similarly designed to satisfy the government's safety objectives.

Additional evidence that supported a finding of an employee relationship in *Becker* is absent in the relationship between Waig and the Forest Service. Waig was selected by means of competitive bidding rather than an elaborate testing procedure. A specific home base was not required to successfully compete for the contract. In *Becker* we noted that the pilot was "subject to close supervision and control in flight." 378 F.2d at 322. The government's ability to tell Waig's pilots where the fire was and where to drop the fire retardant is insufficient to indicate supervision over the physical details of the pilots' daily operations. We reverse the district court's judgment and remand with instructions to dismiss for lack of jurisdiction.

REVERSED AND REMANDED.