ORDER
JENSEN, District Judge.
The Court heard arguments on December 15, 1993 on defendant United States’ motion for summary judgment. Richard L. Bowers of The Boccardo Law Firm appeared on behalf of plaintiffs; Steven M. Talson of the United States Department of Justice ap­peared on behalf of defendants. Having con­sidered the arguments of counsel and the *1448 papers submitted, the Court hereby grants defendant’s motion for the following reasons.
BACKGROUND
I. Factual Background
The facts underlying this dispute were pre­sented in an Order of this Court dated July 8, 1993, which is now deemed incorporated herein. A brief synopsis of this background, however, is a useful predicate to an under­standing of the issues involved.
In 1944 the United States acquired ap­proximately 50 acres of property in Daly City, California. Approximately 40 acres were acquired by condemnation from the pri­vate owners of the property and 10 acres were leased from Pacific Gas & Electric (“PG & E”). The property was taken for the “duration of the existing national emergency” of World War II for the purpose of con­structing national defense housing.
The Federal Public Housing Authority (“FPHA”) directed the construction of a mili­tary housing facility known as Midway Vil­lage for use by the United States Navy on the 40 acres of land. FPHA contracted with the architectural and engineering firm of El-­linger, Lee & Mitchell (“EL & M”) of San Francisco to survey, design and construct the housing facility. In the course of construct­ing the housing facility, contaminated soil was taken from the 10 acres of PG & E property and used to fill the present location of Midway Village. Upon completion of the construction, the United States took posses­sion of approximately 426 family units to house military personnel.
Following the Korean War, the Depart­ment of Defense no longer needed the prop­erty. On May 2, 1955, PG & E and the United States terminated the lease on the 10 acres of land, and the San Mateo County Housing Authority and the Bayshore Ele­mentary School District acquired fee simple title to Midway Village from the United States. The Housing Authority subsequently operated the facility as a low-income public housing project.
By 1976, the buildings had become dilapi­dated. As a result, the San Mateo County Housing Authority demolished the buildings and constructed a new housing facility on the site.
Plaintiffs, 250 current and past residents of the Midway Village public housing complex, brought suit against the United States, the Department of the Navy, and the Depart­ment of Housing and Urban Development (“HUD”) under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 (“FTCA”). Plaintiffs sought damages totalling $125,000,-­000 for personal injuries alleged to be caused by the United States.
In an Order dated July 8, 1993, the Court: (1) denied defendant’s motion to dismiss based on the discretionary function exception to the FTCA; (2) denied defendant’s motion to dismiss based on the independent contrac­tor exception; (3) denied defendant’s motion to dismiss based on plaintiffs’ alleged failure to meet notice requirements; (4) granted defendant’s motion to dismiss plaintiffs’ neg­ligence per se claims; (5) granted plaintiffs’ request that the Navy and HUD be dis­missed as defendants; and (6) allowed the parties to proceed with limited discovery on the issue of the applicability of the discretion­ary function exception and the independent contractor exception of the FTCA.
The United States now brings this motion for summary judgment. In the intervening time since issuance of the Court’s last Order, plaintiffs have conducted no further discov­ery. Again, the government argues its activ­ities are protected by the discretionary func­tion and independent contractor exceptions to the FTCA.
II. Legal Standard
The Federal Rules of Civil Procedure pro­vide for summary adjudication where “the pleadings, depositions, answers to interroga­tories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c).
In a motion for summary judgment, “[i]f the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact,” the bur­den of production then shifts so that “the *1449 nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, ‘specific facts showing that there is a genuine issue for trial.’” T.W. Electric Service, Inc. v. Pacific Elec. Contractors Ass’n, 809 F.2d 626, 630 (9th Cir.1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1983)).
In contrast to a plaintiffs motion for summary judgment, a defendant’s motion for summary judgment faces a lighter bur­den. Because the defendant does not bear the burden of proof at trial, the defendant need only point to the insufficiency of the plaintiffs evidence to shift the burden to the plaintiff to raise genuine issues of fact as to each claim by substantial evidence. T.W. Electric at 630, citing Celotex, at 323-25, 106 S.Ct. at 2553. If plaintiff fails to raise a genuine issue of fact, then summary adjudi­cation in favor of the defendant will be grant­ed.
DISCUSSION
Plaintiffs argue at the onset that their case is uniquely situated since the challenged acts precede enactment of the FTCA. See Plaintiffs’ Opp’n at 9-10. Specifically, plain­tiffs claim their cause of action arises under the FTCA since the alleged injuries post­date the Act’s enactment, but that “the acts or omissions occurring in 1944 cannot be the basis for discretionary function and indepen­dent contractor exceptions [because] it is im­proper to relate back the affirmative defens­es offered by defendant....” Plaintiffs’ Opp’n at 10 (emphasis added). This argu­ment, generously characterized as “a matter of first impression,” id., is entirely unpersua­sive. It is irrelevant that the FTCA does not cover claims accruing before January 1,1945, 28 U.S.C.A. § 1346(b) and that the landfill was placed in 1944. The claims in the pres­ent ease have accrued after that date; the FTCA is the plaintiffs’ sole, attempted reme­dy; and, plaintiff has invoked no legal sup­port to justify glossing over the Act in a manner favorable to plaintiffs merely be­cause the challenged activity preceded enact­ment of the FTCA. Plaintiffs accordingly are within the scope of the Act’s protections as well as its exceptions in maintaining this action. See Reply at 3-4.
Plaintiffs continue to argue that the excep­tions, even if pertinent to the lawsuit, are nonetheless inapplicable under the particular facts presented. Disputing that contention, the government asserts the discretionary function and independent contractor excep­tions divest this Court of jurisdiction to adju­dicate each of plaintiffs’ various theories of liability—(1) that the government impermis-­sibly handled, deposited, stored or dumped toxic or hazardous waste, and (2) that the government failed to monitor the toxic con­tamination of the soil and to warn of the contamination. See Plaintiffs’ Opp’n at 4.
A. Plaintiffs Allegation that the Govern­ment Impermissibly Handled, Depos­ited, Stored or Dumped Toxic or Haz­ardous Waste
Plaintiffs are unable to maintain this claim concerning direct government par­ticipation, given the absence of admissible evidence that has been proffered in support of the theory. Substantially all the available evidence points to the conclusion that the work pertaining to the fill was undertaken exclusively by EL & M. See Mot. at 6. The only evidence supporting the claim of the government’s direct involvement in handling the waste is the opening argument made by government counsel to a jury in a 1948 land valuation case. See Opp’n at 11. Such argu­ments by counsel are not admissible evi­dence, Darden v. Wainwright, 477 U.S. 168, 182, 106 S.Ct. 2464, 2472, 91 L.Ed.2d 144 (1986), and would in any event not be suffi­ciently material in the present context to withstand summary adjudication. See Celo­tex, 477 U.S. at 323-25, 106 S.Ct. at 2553.
B. Plaintiffs’ Argument that the Govern­ment was Negligent in Failing to Pre­vent the Placement of the Contami­nated Soil by EL & M
Plaintiffs argue that “[t]he facts show that Mr. Lee knew the land was not usable for the purposes the government wanted. This information was transmitted to the govern­ment at least by December 21,1944.” Opp’n at 15. Plaintiffs accordingly draw the con­clusion that “the government must have ap­proved the operation since reports were giv­en to the Federal Public Housing Authority orally and in writing.” Id. at 16.
*1450 Giving, as the Court must, plaintiffs the benefit of the inference that the government was aware of Lee’s reports and activities concerning lampblack, the premise of liability is nonetheless misplaced. Specifically, the government is shielded from such liability on the basis of the discretionary function and independent contractor exceptions to the FTCA.
1. The Discretionary Function Exception
In this Circuit at this time, the gov­ernment bears the burden of proving the applicability of an exception to the FTCA’s general waiver of immunity. Prescott v. United States, 978 F.2d 696, 702 (9th Cir.­1992); cf. Kiehn v. United States, 984 F.2d 1100, 1105 n. 7 (10th Cir.1993) (questioning whether the minority rule of Prescott is har­monious with United States v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)).
The discretionary function exception to the FTCA protects governmental action and decisions based upon consideration of public policy. Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). Section 2680(a) of the FTCA specifi­cally establishes the exception, providing that the United States does not waive its sover­eign immunity for
[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
The Supreme Court has developed a two-prong test in analyzing this exception. The test first asks whether the government had discretion to act, i.e. whether or not it was constrained by a mandatory and specific regulation or statute, and next, if it was not so constrained, whether the action was sus­ceptible of being based in social, economic and political policy. If both prongs are satis­fied, the exception becomes applicable and the court is divested of jurisdiction to review the allegations of negligence. Gaubert, 499 U.S. 315, 111 S.Ct. 1267; Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).
As a threshold matter, plaintiffs have cited no mandatory regulation or stat­ute even arguably precluding the govern­ment’s use of lampblack at the time the fill was placed in 1944. See Mot. at 13-14. Thus, the question becomes whether the gov­ernment’s consent to EL & M’s use of such fill was susceptible of being based upon con­siderations of policy. Assuming the govern­ment was aware that its contractor was uti­lizing lampblack as fill, the approval of such activity would be well within the govern­ment’s discretion. Accordingly, the govern­ment has met its requisite burden.
At the hearing, plaintiffs argued on the basis of a recent law review article that, in order to properly invoke the defense of poli­cy considerations, the government must have “deliberately reasoned]” that policy. See H. Krent, Preserving Discretion Without Sacri­ficing Deterrence: Federal Governmental Li­ability in Tort, 38 UCLA L.Rev. 871 (1991). As the author notes marginally, however, the Supreme Court decided Gaubert at the time the article went to press. See id. at 882 n. 57. Since Gaubert constitutes the Court’s most recent word on the contours of the discretionary function exception, that deci­sion provides the appropriate analysis for the present case.
In Gaubert, the Court relieved the government from demonstrating that each challenged action is rooted in a policy consid­eration, instead finding that when statutes, regulations or guidelines allow a government agent to exercise discretion, “it must be pre­sumed that the agent’s acts are grounded in policy when exercising that discretion.” Id. 499 U.S. at 324, 111 S.Ct. at 1274. While the government is thus not obligated to , prove that each operational act ensued from a de­liberate weighing of policy considerations, “the government must, at a minimum, prove that the challenged decision was susceptible to such balancing or that the governmental employee was entrusted with the responsibil­ity of conducting such balancing.” Prescott, 973 F.2d at 703 n. 5; see also Gaubert, 499 U.S. at 324-26, 111 S.Ct. at 1275.
As applied to the present matter, the question before the Court is whether the *1451 United States’ decisions concerning the de­velopment of Midway Village implicate the exercise of policy-making judgments. The government argues that all governmental de­cisions regarding the condemnation of prop­erty and the construction of housing at Mid­way Village were discretionary since any de­cision to allocate scarce time, money and manpower during war time reflects social, economic and political decision-making. As the discretionary function exception includes more than programs and activities, but also “determinations made by executives or ad­ministrators in establishing plans, specifica­tions, or schedules of operations,” Dalehite v. United States, 346 U.S. 15, 35-36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953); Gaubert, 499 U.S. at 324-26, 111 S.Ct. at 1275, it is clear to the Court that the present operational deci­sions are protected by the exception.
Plaintiffs, by citation to Arizona Mainte­nance Co. v. United States, 864 F.2d 1497, 1504 (9th Cir.1989), argue that the use of hazardous land fill cannot be protected by the discretionary function exception since such operational activity regarding what dirt to place is unaffected by policy consider­ations. See Opp’n at 16. In Arizona Main­tenance, the court reversed and remanded a district court decision which had invoked the discretionary function exception to preclude liability stemming from blasting work. The ease, however, is distinguishable. There the court wrote that “[ejlearly a decision to use the cheapest and easiest method in contra­vention of safety standards could not be a protected discretionary function....” 864 F.2d at 1504 (emphasis added). The posture of the present case is different, however, since there has been no showing of any safe­ty standards in contravention of which the landfill was placed. Accord Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) (failure to maintain lighthouse in good condition did not involve any permissible exercise of policy judgment); AHA Leisure Services v. United States, 831 F.2d 193 (9th Cir.1987) (fact that Park Ser­vices was required to work within a budget does not make failure to maintain road a protected discretionary decision).
Given the pressing policy considerations defining the backdrop of the present ease— including a wartime emergency necessitating decision based on cost savings and the need for immediate housing—and the absence of any safety standards arguably breached by the government, the discretionary function exception serves to preclude suit against in government in this matter. The government has accordingly met its burden to demon­strate that the reasons underlying the deci­sion to build the housing were affected by considerations of policy. Prescott, 973 F.2d at 702. Upon making the discretionary deci­sion to construct the facility and to hire EL & M to perform the construction, the govern­ment had the discretion to approve EL & M’s use of fill, or even to ignore the issue altogether.
This disposition of the matter is in accord with a recent Eighth Circuit case involving a factual predicate closely resembling the pres­ent one. In Kirchmann v. United States, 8 F.3d 1273 (8th Cir.1993), a farmer and his family brought suit against the United States under the FTCA, premising liability on groundwater contamination caused during construction of a nearby missile site. The court found the discretionary function excep­tion applicable, and rejected plaintiffs’ asser­tion of negligence in the government’s super­vision of various independent contractors’ employees. “If arguably based on policy considerations, both negligence in supervis­ing a contractor and the failure to supervise a contractor at all are included in the deci­sions protected by the discretionary function exception.” Id. at 1277.
Plaintiffs separately argue in their papers that the government is liable for its failure to warn. Analysis of this assertion of liability does not require a foray into a separate area of law, as the failure to warn claim is a subset of the discretionary function exception already explored. See Reply at 8.
Most fundamentally, this claim fails be­cause there is no evidence that warnings were required or appropriate, let alone any evidence of knowledge in 1944 or 1955 that lampblack was a hazardous substance. See Mot. at 18.[1] Plaintiffs merely argue that it is *1452 not their “burden at this stage to show in 1944 or in 1955 all the significant knowledge possessed about this material....” Opp’n at 20. This argument misunderstands the obli­gation ■ of plaintiffs at summary judgment; that plaintiffs have failed to produce any reasonable evidence at this time is fatal to maintaining the failure to warn claim.
Even in the event plaintiffs were able to show such knowledge, moreover, this claimed basis of liability would be defeated by the discretionary function exception. Case law makes clear that failing to warn of known dangers is often permissibly within the gov­ernment’s discretion. In Begay v. United, States, 768 F.2d 1059 (9th Cir.1985), the court found that the decision of the U.S. Health Service not to disclose to miners the possible health hazards of working in urani­um mines was protected by the discretionary function exception. Here, the wartime deci­sion to secure housing by intentionally elect­ing not to disclose the possible dangers of lampblack would, under the authority of Be-­gay, constitute a protected decision. See 768 F.2d at 1065. See also Layton v. United States, 984 F.2d 1496, 1502-03 (8th Cir.1993) (decision of the Forest Service not to warn a contractor of dangers in cutting trees in na­tional forest protected under the exception).
For these reasons, then, summary judg­ment is appropriately granted in favor of the government on the basis that its challenged acts and omissions were either unsubstantiat­ed by sufficient evidentiary support or were within the permissible scope of its discretion.
2. The Independent Contractor Exception
For the separate and indepen­dent reason that the challenged activity was performed by an independent contractor, this Court is divested of jurisdiction to adjudicate much of plaintiffs’ claims. Under the FTCA, the United .States is subject to liability for damages “caused by the negligent or wrong­ful act or omission of any employee of the Government_” 28 U.S.C. § 1346(b). However, the FTCA “adopts the common-law distinction between the liability of an employ­er for the negligent acts of his own employ­ees and his liability for the employees of a party with whom he contracts for a specified performance.” United States v. Orleans, 425 U.S. 807, 814-15, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976). Thus, under the FTCA, the United States cannot be found liable for the negligence of an independent contractor unless it can be shown that the United States controlled the day-to-day activities of the contractor. Moreover, “[tjhere must be sub­stantial supervision over the day-to-day oper­ations of the contractor in order to find that the individual was acting as a government employee.” Letnes v. United States, 820 F.2d 1517, 1519 (9th Cir.1987).
The issue before the Court is to determine the type of relationship that existed between the United States and the contracting firm of EL & M. The United States argues that it played no active role in the grading, design and construction of Midway Village in 1944. Rather, the government hired an indepen­dent contractor to execute the project from start to finish.
In the previous Order, this Court held that this issue required a factual determination since EL & M’s status as an “independent contractor” vel non was a question of fact. As mentioned above, plaintiffs have conduct­ed no discovery since the time of the last Order. Plaintiffs now renew their argument that EL & M was not an independent con-, tractor on the basis of those same facts be­fore the Court at the time of the motion to dismiss.
Those facts previously before the Court included the trial testimony of Mr. Lee, who stated:
We three, as joint venturers, signed a con­tract with the [United States] to prepare plans, make investigations such as were necessary to prepare specifications and su­pervise the construction of all the housing units that were erected on this project.
Plaintiffs, however, argue that “[t]he facts indicate no contract existed in 1944 when Mr. Lee did his portion of the work. We know grade and fill work was done in 1944.” Opp’n at 17. Plaintiffs continue:
Defendant relies on a statement of Mr. Lee in his testimony that he had a con­tract. This statement is a legal conclusion on the part of Mr. Lee and should not be *1453 given any weight. To the contrary howev­er there is a written document signed by Mr. Lee that he was proceeding by reason of letter authorization.

Id.

Mr. Lee’s assertion of the existence of a contract, and the nature of the ensuing rela­tionship between EL & M and the govern­ment clearly evince an independent contrac­tor relationship, notwithstanding that the re­lationship might not have been so character­ized in 1944. As discussed above, any evi­dence supporting the assertion of active gov­ernment involvement or supervision is mini­mal or non-existent. Accordingly, given the absence of evidence of “substantial supervi­sion of the day-to-day operations of the con­tractor,” Letnes v. United States, 820 F.2d 1517, 1519 (9th Cir.1987), no liability will accrue to the United States in this instance. Plaintiffs’ reference, moreover, to a “letter authorization” is of dubious support in at­tempting to establish a “principle [sie.]-agent relationship” between the government and EL & M. Id. at 19.[2] Plaintiffs have failed to establish any genuine issue of material fact with respect to the relationship between the parties, which the Court now concludes was an independent contractor relationship. Summary judgment is appropriately granted in favor of the government on the alternative basis that, having hired an independent con­tractor, the government is not liable for that contractor’s acts.
CONCLUSION
For the foregoing reasons, summary judg­ment is GRANTED in favor of the govern­ment and against plaintiffs; judgment shall be entered accordingly.
IT IS SO ORDERED.

. In the present case, moreover, since only six borings showing traces of lampblack were re­vealed, it is questionable from a factual point of view whether there was sufficient risk, as per­ *1452 ceived in 1944, for the government to even con­template issuing a warning.

. The absence of any reasonable evidentiary sup­port for the assertion of an agent-principal rela­tionship readily distinguishes the present case from Ferguson v. United States, 712 F.Supp. 775 (N.D.Cal.1989) (government had designated plaintiff as an agent pursuant to explicit contrac­tual language).