No. 92-251

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

DAVID A. KREBS,

      Plaintiff and Appellant,

v.

RYAN OLDSMOBILE,

      Defendant and Respondent.



FILED

DEC 1 - 1992

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell K. Fillner, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

         W. Scott Green, Attorney at Law,
         Billings, Montana

      For Respondent:

         Steven J. Lehman, Crowley, Haughey, Hanson,
         Toole & Dietrich, Billings, Montana

Submitted on Briefs:  September 10, 1992

Decided:  December 1, 1992

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Plaintiff David A. Krebs brought a wrongful discharge from employment action in the District Court of the Thirteenth Judicial District, Yellowstone County, against defendant Ryan Oldsmobile. Both parties brought motions for summary judgment. The District Court granted Ryan Oldsmobile's motion for summary judgment and denied Krebs' motion. We affirm in part and reverse in part.

We phrase the issues before the Court as follows:

1. Did the District Court err in granting Ryan Oldsmobile's motion for summary judgment?

2. Did the District Court err in denying Krebs' motion for summary judgment?

David A. Krebs was employed by Ryan Oldsmobile from July 25, 1989, until January 10, 1990, when he was discharged. On January 4, 1990, Krebs provided information to the Montana Criminal Investigation Bureau (MCIB) concerning alleged illegal drug activity by several employees of Ryan Oldsmobile. At this time, Krebs agreed to continue to provide information on illegal activity at Ryan Oldsmobile and to attempt to purchase illegal drugs from the employees of Ryan Oldsmobile who were allegedly selling drugs. There is no evidence indicating that Krebs was to be paid for providing this information.

On January 9, 1990, a vehicle owned by a known fugitive from justice was dropped of at Ryan Oldsmobile. Krebs called the MCIB and informed them of the vehicle. Sometime after Krebs made the call to MCIB, Dick Ryan of Ryan Oldsmobile pressed the redial

2

button on the phone Krebs had used and learned that Krebs had called a law enforcement agency.

The following day, January 10, 1990, Dick Ryan and Pat Ryan, along with several employees of Ryan Oldsmobile schemed to "set up" Krebs. Pat Ryan announced that he was going to meet the fugitive at a local business in the vicinity of Ryan Oldsmobile. The purpose of this scheme was apparently to determine if Krebs would report to law enforcement information regarding this fictitious meeting with the fugitive. Krebs did phone the MCIB and informed them that Pat Ryan would be meeting at a nearby business establishment with the fugitive. An employee of Ryan Oldsmobile hit the redial button on the phone used by Krebs and learned that Krebs had again called a law enforcement agency. The employee informed Pat Ryan who immediately sought out Krebs and fired him.

The scheme devised by Pat Ryan to confirm his belief that Krebs would report illegal activity if given the chance also got Mr. Ryan into trouble with law enforcement officials and federal prosecutors. Acting on this information, law enforcement personnel surrounded the local business establishment in an attempt to capture the fugitive. They did not capture anyone.

On January 11, 1990, one day after he had been fired, Krebs called Pat Ryan. The telephone conversation was recorded and the following is a transcript of that conversation:

> Krebs: How are you doing? Hey, I am wondering what the deal is here. What, you're so upset about, what is, you know, what's the story here, as far as, as me working? What's, what's up?

3

Ryan:     Well, number one is the misuse of the dealer plate, Dave.  You know that you can't run dealer plates on your, on your truck.  Number two, you're a [expletive deleted] snitch and we don't want you around here, basically.

Krebs:    How's that?  I mean, I don't . . .

Ryan:     Every time we make a move, you call the [expletive deleted] FBI.  We caught you [expletive deleted] redhanded twice.

Krebs:    I'm sorry, you're wrong.

Ryan:     You . . . (unintelligible) . . . Well, I know that I'm not wrong, Dave.  No matter what you say, I know you're [expletive deleted] boldfaced lying.

Krebs:    Uh . . .

Ryan:     I set you up yesterday, partner.  You went over to the service department, you made a phone call, we hit redial after you left and it was some federal crime bureau.  The same thing happened the night before when Dick and Alisse set you up, Dave.  You went into Harkin's office.  After you left Dick hit redial, same [expletive deleted] group of people.  It's funny how I walk out and the place is surrounded by FBI agents.  I laughed my [expletive deleted] off, and there you were watching all the action.  You come get your [expletive deleted] check, get your plate back and I need your key too.  That's all I have to say to you.

Krebs:    Uh . . .

Ryan:     Tell . . . Tell Carl nice try.

Krebs:    That doesn't make . . . .

Krebs brought a wrongful discharge from employment action on September 10, 1990.  Ryan Oldsmobile alleged that Krebs did not get along with other employees, that he disrupted the operation, and that various other legitimate business reasons existed which justified Krebs' discharge.  The District Court granted Ryan

4

Oldsmobile's motion for summary judgment and denied Krebs' motion for summary judgment.

I

Did the District Court err in granting Ryan Oldsmobile's motion for summary judgment?

A district court judge may grant summary judgment when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.

Sherrodd, Inc. v. Morrison-Knudsen Co. (1991), 249 Mont. 282, 284, 815 P.2d 1135, 1136; Rule 56(c), M.R.Civ.P. The party moving for summary judgment has the initial burden of showing that there is a complete absence of any genuine issue of material fact. To satisfy this burden, the movant must make a clear showing as to what the truth is so as to exclude any real doubt as to the existence of any genuine issue of material fact. Kober v. Stewart (1966), 148 Mont. 117, 417 P.2d 476. Summary judgment is never an appropriate substitute for a trial if a factual controversy exists. Reaves v. Reinbold (1980), 189 Mont. 284, 615 P.2d 896. If there is any doubt as to the propriety of a motion for summary judgment, it should be denied. Rogers v. Swingly (1983), 206 Mont. 306, 670 P.2d 1386. Upon reviewing a grant or denial of a motion for summary judgment, this Court applies the same standard as the district court.

Krebs brought an action claiming that his termination from employment violated the Montana Wrongful Discharge From Employment

Act (Wrongful Discharge Act) found at § 39-2-901 through -914, MCA. Section 39-2-904, MCA, of the Wrongful Discharge Act sets forth the elements of wrongful discharge, and provides that:

A discharge is wrongful only if:

(1) It was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy;

(2) The discharge was not for good cause and the employee had completed the employer's probationary period of employment; or

(3) The employer violated the express provisions of its own written personnel policy.

The clear and unambiguous language of the statute provides that proof of any one of the three elements will support a wrongful discharge action. The elements of the statute applicable to Krebs' claim of wrongful discharge were correctly set out by the District Court in its order and memorandum granting summary judgment to Ryan Oldsmobile. The District Court stated that:

In the present case, Krebs concedes that Ryan did not violate the express provisions of a written personnel policy since it had none, nor was he a probationary employee. Therefore, in order for Kreb's [sic] to establish a claim under Montana's wrongful discharge act he must prove that his discharge was was [sic] not for good cause or that his discharge was in retaliation for reporting a violation of public policy.

The District Court then determined that Krebs failed to present any genuine issues of material fact which would preclude summary judgment on Ryan Oldsmobile's contention that the discharge was for good cause. The District Court also granted summary judgment to Ryan Oldsmobile on the issue of whether Krebs' termination was in retaliation for reporting a violation of public

6

policy. The court stated that although "a good faith reporting of a statutory violation which never occurs or is unfounded can serve as a basis for a wrongful discharge claim," summary judgment was appropriate in this situation. The court concluded that due to the nature of Krebs' conduct in this case he was not protected by the Wrongful Discharge Act. The court added that even if Krebs' conduct was covered by the Wrongful Discharge Act, there was no question that he was not discharged in retaliation for reporting a violation of public policy.

We will first consider the court's summary judgment order in favor of Ryan Oldsmobile on the issue of good cause. Section 39-2-903(5), MCA, provides that:

> "Good cause" means reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason.

Ryan Oldsmobile presented evidence to the District Court which, if proven to be true, could support their contention that Krebs was discharged for good cause. However, Krebs also presented evidence tending to show that he was not discharged for good cause. The evidence offered by Krebs clearly presents a genuine issue of material fact which remains to be determined, thus precluding summary judgment on the issue of whether good cause existed for the discharge.

The District Court then recognized that the Wrongful Discharge Act protects a good faith "whistle blower." However, the court stated that the Wrongful Discharge Act would not cover "a paid

7

government agent (undercover police officer) whose sole purpose is to investigate and report public policy violations to their primary employer." The court concluded that Krebs' status was more akin to that of an undercover police officer, and therefore, the statute forbidding termination of an employee for the reporting of a violation of public policy did not apply to Krebs. We disagree. Krebs was clearly an employee as defined in § 39-2-903(3), MCA. Krebs approached law enforcement in order to volunteer information. He was not sought out or placed by law enforcement. Krebs was not promised remuneration. Krebs provided information on only three occasions. Krebs' relationship with law enforcement lasted a total of six days. Finally, Krebs was paid a grand total of $40 for the information provided and this sum was paid several weeks after he was discharged. To hold that an individual who provides information concerning violations of public policy will not be covered by the Wrongful Discharge Act if they agree to cooperate, even minimally with law enforcement, would be to thwart the very purpose of the statute. The statute states that a discharge in retaliation for reporting a violation of public policy is a wrongful discharge. Krebs' conduct was protected under the Wrongful Discharge Act.

In this case, the recorded telephone conversion, by itself, is sufficient to create a genuine issue of material fact as to whether Krebs was discharged in retaliation for reporting a violation of public policy. Summary judgment was not appropriate in light of the contested factual issues.

8

Summary judgment is proper when there is no genuine issue of material fact as to whether an employee was discharged for good cause or in retaliation for reporting a violation of public policy. However, in this case there are genuine issues of material fact which remain to be decided by the trier of fact. The District Court's granting of summary judgment to Ryan Oldsmobile is reversed.

## II

Did the District Court err in denying Krebs' motion for summary judgment?

Ryan Oldsmobile denies that Krebs was wrongfully discharged and argues that numerous reasons existed which justified Krebs' discharge. Ryan Oldsmobile has raised genuine issues of material fact which are in dispute relating to Krebs' discharge and which are clearly sufficient to survive Krebs' motion for summary judgment. The District Court's denial of Krebs' motion for summary judgment is affirmed.

This matter is affirmed in part and reversed in part and remanded to the District Court for a trial to determine whether Krebs was discharged for "good cause" and for a determination of whether Krebs was discharged in retaliation for reporting a violation of public policy.

_____
Justice

9

We concur:

_____
Chief Justice

_____

_____

_____
Justices