**Bonnie Sue KENDRICK**

v.

**UNITED STATES of America.**

No. 1:93 CV 462.

United States District Court,
E.D. Texas,
Beaumont Division.

June 3, 1994.

Tommy Lee Yeates and Jimmy Doyle Hulett, Jr., Moore, Landrey, Garth, Jones, Burneister & Hulett, Beaumont, TX, for plaintiff.

Olen Ken Dodd, Asst. U.S. Atty., Beaumont, TX, for defendant.

## MEMORANDUM OPINION AND ORDER DENYING GOVERNMENT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

SCHELL, Chief Judge.

CAME ON TO BE CONSIDERED the United States of America's Motion to Dismiss or, in the Alternative, for Summary Judgment. The court, after considering the Motion, the Response, the evidence, and the law, is of the opinion that the Motion should be DENIED.

Bonnie Sue Kendrick was injured as she was exiting the United States Post Office in Bridge City, Texas. A wheelchair ramp was

being repainted with yellow nonstick paint. Kendrick slipped on the wet paint and fell, hurting her back and ruining her dress. Bernie Gonzales painted the wheelchair ramp. Gonzales was an employee—and maybe part owner—of B & G Striping Company, an independent contractor hired to maintain the facility. J.R. Stimac was the Postmaster on the premises. Kendrick brought suit directly against the United States government based on the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80.

The government filed its motion to dismiss for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment. It submitted evidence with the motion. The nonmovant submitted evidence with its response. As such, the court will treat the motion solely as one for summary judgment.

The Federal Tort Claims Act partially waives sovereign immunity and makes the United States liable for money damages "caused by the negligent or wrongful act or omission of any employee of the Government...." 28 U.S.C. § 1346(b). Whether an individual is an employee of the government is a question of federal law. *Cavazos v. U.S.*, 776 F.2d 1263, 1264 (5th Cir.1985). "Employee of the government" includes persons acting on behalf of a federal agency in an official capacity, serving with or without compensation. 28 U.S.C. § 2671. "Employee of the government" does not include an independent contractor or its employees. *Logue v. U.S.*, 412 U.S. 521, 527, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973). In the case sub judice the government contends that it cannot be liable for the actions of Bernie Gonzales as he is an employee of an independent contractor. The government also contends that it is not liable under any other theory of liability, particularly premises liability. Each contention will be addressed in turn.

### Respondeat Superior Negligence

■ Plaintiff contends that the Government is barred from raising the "independent contractor" defense. Plaintiff maintains that this defense is an affirmative defense, and must be raised in the answer under Fed.

R.Civ.P. 8(c) or it is lost. This issue has been considered by *Broussard v. U.S.*, 989 F.2d 171, 176–77 (5th Cir.1993) (per curiam). The best reading of *Broussard* holds that the independent contractor defense is actually a jurisdictional prerequisite, not an affirmative defense. *See id.* at 176 (couching analysis of independent contractor exception in jurisdictional language). An affirmative defense, in black-letter law, is a defense which results in a victory for the defendant even if the plaintiff prevails entirely on his prima facie case. In a tort suit such as this one, if an independent contractor breaches a duty owed, then his breach of duty is not imputed to the government under the terms of the statute. The *government* has breached no duty. Thus, the plaintiff's prima facie case against the government fails since she has not proven each element necessary for recovery against the government. The independent contractor "defense" is a failure of the plaintiff's prima facie case, not an affirmative defense. Furthermore, Title 28 U.S.C. section 1346(b)—providing this court jurisdiction—only provides jurisdiction for culpable acts of "employees" of the federal government. Therefore, if plaintiff is not an "employee," this court lacks jurisdiction and the court should dismiss on that ground rather than grant summary judgment. *Broussard*, 989 F.2d at 177. Since the independent contractor defense is not an affirmative defense but rather a jurisdictional prerequisite that may be raised at any time, *Broussard*, 989 F.2d at 176, the Government's motion will be freely considered.

■ A critical—and, for manual laborers, perhaps dispositive—factor in determining whether an independent contractor is an "employee" under the FTCA is the power of the government to control the detailed physical performance of the contractor. *Broussard*, 989 F.2d at 174. The contract between B & G and the government controls *every* facet of B & G's performance, leaving little or no room for independent discretion on the part of the contractor. For example, when maintaining "nonresilient" floors, step number 11 under the contract requires that B & G:

Begin applying the floor finish solution from the wall outward, parallel to and 1 inch away from the baseboards, forming wet, parallel strips on the floor. Then, walking backward, apply the finish in a figure–8 motion to the inner edges of the parallel strips so as not to splash baseboards and walls.

Contract at 14, ¶ B.6(b)(2)(a)(11). The contract specifies every single step, motion and technique. It specifies which days tasks are to be performed, and between which hours. Contract at 3; Contract Attachment 2 at 1–3. A contractor officer's representative inspects the services supplied by B & G to ensure "day-to-day" compliance. Contract at 18, 20. Admittedly, the right of inspection to ensure contract and safety regulation compliance is not enough. *Alexander v. U.S.*, 605 F.2d 828, 834 (5th Cir.1979). And regulations embodied in the contract to implement federal objectives do not convert the employees of a contractor to employees of the government. *U.S. v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976). However, if regulations and inspection rise to the level of complete day-to-day supervision and control, as they apparently do here, then the rule of *Logue* is invoked.[1] Moreover, Stimac partially directed Gonzales's conduct in the incident in question. Stimac requested Gonzales to place cones around the ramp. Dep. B.

Gonzales at 24. Gonzales says that if Stimac had ordered him to use different warning devices, he would have followed orders because "[Stimac]'s the boss." Dep. B. Gonzales at 46. This evidence is sufficient to withstand summary judgment on the issue of day-to-day control. Thus, summary judgment is inappropriate, and Gonzales will be considered an employee for purposes of the remainder of this memorandum. The government is free to reassert this issue during trial.

■ The government paints Gonzales's actions as volunteer work outside of his normal duties. This raises the second inquiry— whether Gonzales's actions were within the scope of performance of his "employer," the United States government. While *Craft*, 542 F.2d at 1254–56, does not directly state the proposition, this inquiry is one of federal law which looks to substantive state law for resolution. Determination of military personnel's "line of duty" status looks to state law of respondeat superior. *Williams v. U.S.*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam). And in the Fifth Circuit, "scope of employment" equates with "line of duty." *Craft*, 542 F.2d at 1255–56 & n. 14. Thus, "scope of employment" under § 1346(b) takes its meaning from applicable state law. *E.g., Attallah v. U.S.*, 955 F.2d 776, 781 (1st Cir.1992).[2]

---

**1.** The Ninth Circuit has stated that the Supreme Court "has indicated that detailed regulations and inspections are no longer evidence of an employee relationship. In interpreting *Logue* and *Orleans,* our court has said that the ability to compel compliance with federal regulation does not change a contractor's personnel into federal employees. There must be substantial supervision over the day-to-day operations of the contractor in order to find that the individual was acting as a government employee." *Letnes v. U.S.,* 820 F.2d 1517, 1519 (9th Cir.1987) (citations omitted); *cf. Lutz v. U.S.,* 685 F.2d 1178 (9th Cir.1982) (regulation meant tortfeasor within scope of employment). The court disagrees with the Ninth Circuit's interpretation of *Logue* and *Orleans.* It is indisputable that mere regulation or inspection cannot characterize an employee as a government employee. But the court believes that such regulations and inspections can be considered in the ultimate question of whether there is the power to control the physical details of day-to-day work. In the post-*Orleans* case of *Craft v. U.S.,* 542 F.2d 1250 (5th Cir.1976), the Fifth Circuit looked to governmen-

tal regulations as well as verbal and written instructions in declaring that the government retained the right to control a soldier's performance of groundskeeping duties. The court further held that "line-of-duty" for military personnel under the Act equated with "scope of employment" for civilians. Therefore, the court will look at the specific contract provisions, including right of inspection, as suitably weighted evidence in its inquiry.

**2.** The court agrees with much of the reasoning, but not the holding, of *Garcia v. U.S.,* 799 F.Supp. 674 (W.D.Tex.1992). There the court held that federal common law should determine the scope of employment issue. However, *Williams* and *Craft* have already decided this issue regarding the uncertainties of Section 1346(b). And the 1988 amendments to 28 U.S.C. 2679, relied upon by *Garcia,* do not expressly determine the proper choice of law. Thus, this court feels bound to follow the logical result of reading *Williams* with *Craft* in holding that "scope of employment" takes its meaning from state law.

■ Ordinarily, to impose liability under Texas law upon an employer for the tort of his employee under respondeat superior, the tortious act must fall within the general authority of the employee in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired. *Durand v. Moore,* 879 S.W.2d 196 (Tex.App.—Houston [14th Dist.] 1994, n.w.h.). The employee's tortious conduct will be within the scope of employment when the tortious conduct is of the same general nature as that authorized or incidental to the conduct authorized. *Id.* Painting the markings in the parking lot is within the general character of the contract with B & G Striping Company—performing groundskeeping and maintenance duties. Stimac avers that Gonzales completed the painting during his normal work hours. Aff. Stimac at ¶ 4. Moreover, the action was tacitly authorized by Stimac, the government's representative. Dep. Stimac at 30–31.[3] And Gonzales's actions were clearly done for the benefit of the Post Office. Thus, Gonzales's actions were not outside the scope of his "employment."

Therefore, if negligence can be established on the part of Bernie Gonzales,[4] his negligence will be imputed to the United States. Summary judgment on this ground is denied.

### Government's Separate Negligence

■ Even if Gonzales strictly was an employee of an independent contractor, the government would not be entitled to complete summary judgment. While the government would not be liable for Gonzales's alleged negligence, it could nonetheless be liable itself under premises liability.

■ The government owed a duty to Kendrick as a business invitee. Gov. Mot. at 6 ("For purposes of this motion, the United States admits that the Plaintiff was an invitee"). It owed her the duty keep the premises in a reasonably safe condition and to inspect the premises in order to discover any latent defects or give adequate warnings.[5] *H.E. Butt Grocery Co. v. Godawa,* 763 S.W.2d 27, 29 (Tex.App.—Corpus Christi 1988, no writ). If an independent contractor creates a dangerous condition, the government still has the separate responsibility of fulfilling its independent duty of care. The closest example of an analogous fact pattern is a drink spilled by a customer in a department store. The negligence of the sloppy shopper cannot be imputed to the store. *See Godawa,* 763 S.W.2d at 29 (holding that premises owner must create or maintain unreasonable condition). But if the store has (1) actual or constructive notice of the (2) unreasonably dangerous premises condition and (3) does not exercise reasonable care to reduce or eliminate the risk and (4) such a failure proximately causes the plaintiff's injuries, then it can be liable for its own breach of duty. *Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992).

The record reflects that the government, through Stimac, knew that the sides of the ramp would be and were wet with paint. Dep. Stimac 23–32. Thus, the government had notice of a dangerous condition, and a duty to use ordinary care. Looking at the evidence in the light most favorable to the nonmovant, the record reflects that plaintiff's injuries were caused by the government's acts or omissions. The reasonableness of the

---

**3.** "Q: When he volunteered the services, did you know that it would be at no labor expense? A.: Well, at the particular time I don't think I was concerned about whether it would be a labor expense. It was something that I felt like needed to be done immediately." Dep. Stimac at 30–31. *See also* Dep. Stimac at 29 (Stimac's involvement in paint selection).

**4.** Of course, Kendrick will have to support this contention with both facts and law. At trial, Kendrick should support its theories of negligence with authorities.

**5.** The court is aware that under Texas law, a unit of Texas government generally owes an invitee the same duty it owes a licensee. Tex.Civ.Prac. & Rem.Code Ann. § 101.022 (Vernon 1986). However, the FTCA makes the government liable as if it were acting as a *private* entity. 28 U.S.C. § 1346(b). And the type of maintenance activity involved is not the sort of action where there is no private analogue. *See Aguilar v. U.S.,* 920 F.2d 1475, 1477 (9th Cir.1990) (where no private analogue for tortious activity exists, hold federal government liable to same extent as unit of local government). Thus, the court will apply the general Texas law of private land occupier premises liability.

danger of the condition and the government's corresponding degree of care are questions for the finder of fact. *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616 (5th Cir.1994) (holding if plaintiff provides sufficient evidence for each element of recovery, reasonableness inquiries are for jury in negligence cases). As such, the government is not entitled to summary judgment.

■ The government argues that recovery is barred because the defective condition was "open and obvious" and Kendrick appreciated its danger. Mot. at 7–8. The government is referring to the "no-duty" doctrine respecting invitees. This doctrine held that if a dangerous condition is patently obvious, or the invitee knew of the defective condition, the occupier of land had *no duty* to protect or warn the invitee. *Adam Dante Corp. v. Sharpe*, 483 S.W.2d 452 (Tex.1972), formulated the doctrine in terms of "no duty," not contributory negligence. However, *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 n. 1 (Tex.1983), noted that the Texas Supreme Court had abolished the "no duty" doctrine with respect to invitees. *Id.* at 295 n. 1, *citing Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex.1978) (abolishing "no duty" rule after considering its overlap with the abolished assumption of risk doctrine). "The invitee's knowledge and conduct are now factors the jury must weigh in determining whether the invitee was contributorily negligent, not whether the premises occupier was negligent." *Corbin*, 648 F.2d at 295 n. 1. In *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex.1992), the court noted that a difference between licensees and invitees under Texas law was that "a licensee must prove that he did not know of the dangerous condition, while an invitee need not do so." *Id.* at 237. Whether or not Kendrick appreciated the danger is not a direct bar to her recovery but will instead be considered under comparative negligence.

As no other theories of liability or exculpation have been presented for consideration under Rule 12(b) or Rule 56, the court's inquiry has ended.[6]

Accordingly, the United States of America's Motion to Dismiss or, in the Alternative, for Summary Judgment, is DENIED.

---

6. Kendrick's reply intimates that a negligent supervision or entrustment theory may be submitted. The government's motion only addresses premises liability and the independent contractor defense. As such, only the latter two issues are considered.