37 F.3d 1507
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Milo WARDEN, Plaintiff-Appellant,
v.
UNITED STATES DEPARTMENT OF JUSTICE, United States Marshal
Service, Ronald Alles, David Bradley, and Don
Combs, Defendants-Appellees.
 No. 93-35197.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 9, 1994.
Decided Oct. 7, 1994.
 
 1
 Before: WIGGINS and THOMPSON, Circuit Judges, EZRA*, District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 The United States Marshals Service (USMS) is charged with obtaining federal court security. Accordingly, the United States, through USMS, "awards contracts to independent contractors who bid for the responsibility of implementing and overseeing" the Court Security Officer (CSO) program. CR 38. USMS deputizes CSOs "hired by the independent contractor and, because of logistics, provides feedback to the independent contractor as to day-to-day job performance." Id.
 
 
 4
 Appellant Milo Warden was hired by Midwest Patrol in 1984. At that time, Midwest Patrol had been awarded the CSO program contract for Montana. Midwest Patrol assigned Appellant to the federal courthouse in Great Falls, Montana. In October, 1988, Central Security Systems, Inc. ("CSSI") was awarded the security contract in place of Midwest Patrol. CSSI hired Appellant on October 1, 1988, and retained him at the Great Falls courthouse. CSSI paid Appellant, gave him benefits, and arranged his vacation leave and other aspects and indicia of his employment. In October 1988, USMS indicated to CSSI some dissatisfaction with Appellant's performance. When Appellant's performance did not improve, Appellant was fired on December 9, 1988, about 70 days after he was hired.
 
 
 5
 Appellant sued the United States Department of Justice, USMS, and several USMS employees. In Count I, Appellant sought damages under the Federal Tort Claims Act (FTCA) for wrongful discharge, loss of income, and negligent infliction of mental and emotional distress. In Count II, Appellant alleged a Bivens action: that individual USMS employees had interfered with his constitutionally protected property interest in employment. The district court granted summary judgment on both counts. Appellant timely appeals. We find that answering two questions resolves this appeal.
 
 
 6
 I. Was Appellant a government employee?
 
 
 7
 Appellant argues that he was a government employee because he was subject to close supervision by USMS. He alleges that USMS controlled the location and number of CSO posts; the hours worked per day and per week; the nature of CSO duties required to meet security needs; reporting and record-keeping requirements; appropriate emergency responses; length and frequency of coffee and lunch breaks; ultimate duty locations and/or nature of temporary duty; CSO orientation requirements; CSO minimum qualifications; minimum weapons proficiency requirements; a dress code for CSOs; qualifications for deputation; and CSO's duties regarding grand juries, opening and closing court, preserving order, and serving as court messenger. Appellant also alleges that USMS had authority to remove him from his duties as a CSO and that CSSI was acting under USMS orders when it discharged him from employment.
 
 
 8
 We are not persuaded. "The United States is not liable under the FTCA for the [acts] of its independent contractors." Ducey v. United States, 713 F.2d 504, 516 (9th Cir.1983). "The critical test for distinguishing an agent from a contractor is the existence of federal authority to control and supervise the detailed physical performance and day-to-day operations of the contractor, and not whether the agent must comply with federal standards and regulations. .... While by contract, the federal Government may fix specific and precise conditions to implement federal objectives, such restrictions required by regulation do not convert the acts of entrepreneurs ... into federal governmental acts." Id. at 516 (internal quotations and brackets omitted).
 
 
 9
 In Ducey, a national park concessionaire (ECR) operating within a national recreational area was alleged to be a federal agency, and ECR's employees were alleged to be federal employees. We rejected those allegations, even though ECR's prices were subject to national park approval and ECR was obliged to maintain and operate its facilities "to such extent and in such manner as the [federal government] may deem satisfactory." Id. (internal quotations omitted). ECR was also required to pay a fixed percentage of earnings to the government and comply with numerous other contractual provisions, many of which had their origin in regulation. The National Park Service had authority to disapprove "unfit" employees of ECR and to require ECR employees to wear a uniform or badge. However, the National Park Service did not have authority to supervise initial hiring decisions, the assignment of job tasks, the frequency of uniform laundering, and certain other day-to-day activities. Id. For these reasons, we held that ECR was not a federal agency and its employees were not federal employees.
 
 
 10
 Letnes v. United States, 820 F.2d 1517 (9th Cir.1987), is also apposite. In Letnes, plaintiffs alleged that Waig Aircraft was a federal agency and that its pilots were thus federal employees. Id. at 1517-18. The Forest Service had contracted with Waig for Waig "to carry and drop liquid fire retardant on forest and range fires." Id. at 1518. Government control included "pilot certification, maximum work hours, ... inspections" of planes, "weighing and balancing requirements, engine overhaul procedures, and extensive and detailed equipment provisions including requirements for flashlight batteries, bandages, and exterior markings on the plane." Id. at 1519.
 
 
 11
 Ducey and Letnes control here. Appellant has alleged that USMS, a federal agency, had authority to disapprove CSOs. Because Appellant complains solely that he was wrongfully discharged, that authority is primarily at issue. Ducey requires us to hold that federal government authority to remove an employee does not make CSSI a federal agency or Appellant a federal employee. That Appellant was made to dress so as to appear to be connected with the government is also irrelevant; the same could be said of employees of ECR in Ducey. Finally, that Appellant was maintaining federal property is also irrelevant. Thompson v. United States, 592 F.2d 1104, 1107 (9th Cir.1979).
 
 
 12
 The other aspects of control present in this case are insufficient to distinguish this case from Ducey and Letnes. Though the government necessarily requires CSOs, consistent with their function, to work during certain hours in certain places, to keep certain records, to do certain duties, and to meet certain training requirements, these requirements are, as were requirements imposed on pilots in Letnes, "designed to secure minimum safety, not to control the detailed physical operation of the [job]." 820 F.2d at 1519.[1] USMS does not control initial hiring decisions, job assignments, pay, promotions, benefits, vacations, and other aspects of employment. We find it telling in this case that all alleged USMS requirements applied only to CSOs, not to other CSSI employees.
 
 
 13
 Employees of independent contractors who provide services may sometimes feel that they have to please two masters. First, they must please their employer. Second, if they do not please their employer's customer, in this case, the government, the customer may complain to the employer and place the contract between employer and customer in jeopardy. The employer may then deal with the employee in a manner the employee feels is harsh. An independent contractor for services may remain independent, however, even though it contracts with the government to provide fairly detailed services. Ray, 420 F.2d at 919. Because Appellant was not a government employee, Count I of his complaint was properly dismissed.
 
 
 14
 II. Was Appellant deprived of a constitutional right?
 
 
 15
 Appellant's Bivens action is premised on the denial to him of a constitutionally protected property interest in his employment and a substantive due process right to continued employment. Appellant has a "constitutional right to be free from unreasonable government interference with his private employment." DiMartini v. Ferrin, 906 F.2d 465, 466 (9th Cir.1990), amending 889 F.2d 922 (1989), cert. denied, 501 U.S. 1204 (1991).
 
 
 16
 However, "[f]or the purpose of a due process claim, an employee must show more than an expectation in continued employment; he must demonstrate a claim of entitlement to continued employment." DiMartini, 906 F.2d at 467; accord FDIC v. Henderson, 940 F.2d 465, 475 (9th Cir.1991); Merritt v. Mackey, 827 F.2d 1368, 1371 (9th Cir.1987). "In determining whether there is an entitlement to the benefit in question, we look not to the Constitution but to existing rules and understandings that stem from an outside source such as state law." Merritt, 827 F.2d at 1371 (internal quotations omitted); accord Henderson, 940 F.2d at 475.
 
 
 17
 Montana law does not provide Appellant with an entitlement to employment at CSSI. In Montana, "employment having no specified term may be terminated at the will of either the employer or the employee ... for any reason considered sufficient by the terminating party." Mont.Code Ann. Sec. 39-2-902. Appellant had no specified term of employment or even a contract. CSSI had no policy manual and no period of probation. Appellant's employment appears to have been at will.
 
 
 18
 Notwithstanding his at-will employment status, Appellant argues that he had a right not to be discharged in violation of public policy. Appellant alleges that he was fired in retaliation for suggesting that security measures at the Great Falls courthouse be improved. He suggests that his discharge in retaliation for suggesting improved security was in violation of public policy.
 
 
 19
 While we agree that Appellant has a right not to be discharged in violation of public policy, Krebs v. Ryan Oldsmobile, 843 P.2d 312, 315 (Mont.1992), we disagree that he was so discharged in this case. "Administrative rules promulgated by state agencies are one source of public policy.... Termination of an employee for refusing to participate in illegal or immoral activities also violates public policy." Kittelson v. Archie Cochrane Motors, Inc., 813 P.2d 424, 426-27 (Mont.1991) (citations omitted). Examples include "dismissal of employee for not perjuring himself; dismissal of employee who files for workers' compensation; or dismissal of the employee who refuses sexual relationships with employer." Belcher v. Department of State Lands, 742 F.2d 475, 478 (Mont.1987).
 
 
 20
 In Keneally v. Orgain, 606 P.2d 127 (Mont.1980), the Montana Supreme Court rejected the argument that public policy was violated when an employee was fired for complaining to his employer that customers were not being adequately served because the employer's promises to service business machines sold to customers were not fulfilled. 606 P.2d at 129-30. In doing so, the Court quoted from and cited with approval Geary v. United States Steel Corp., 319 A.2d 174 (Pa.1974), in which the Pennsylvania Supreme Court held that no public policy was violated when an employee was fired for complaining to his superiors that the products his employer sold were unsafe. Id. at 175, 178-79.
 
 
 21
 In this case, Appellant alleges, at most, that he was discharged for disagreeing with the government as to how to provide security for the courthouse. We think that Appellant's claimed "violation" of public policy is most similar to those at issue in Keneally and Geary. Discharge in retaliation for mere disagreement with others as to public safety aspects of the product produced or the service provided by the employee is not in violation of public policy under Montana law.[2]
 
 
 22
 Because Appellant was an employee at will and has not demonstrated that he was discharged in violation of public policy or law, we conclude that he has not shown an entitlement to employment. We therefore conclude that Appellant lacked a protected property interest in his employment. Inasmuch as Appellant's Bivens action rested on an unconstitutional deprivation of a protected property interest, it was properly dismissed.
 
 
 23
 Further, Appellant's substantive due process claim must fail. Affidavits supporting the defendants' motion for summary judgment adequately justify any government action that interfered with Appellant's liberty interest in pursuing the "common occupations or professions of life." Lebbos v. Judges of Super. Ct., 883 F.2d 810, 818 (9th Cir.1989) (internal quotations omitted). Omitting those facts specifically disputed by Appellant's affidavit in rebuttal, we find that sufficient undisputed facts remain to show that the government's action was not "clearly arbitrary and unreasonable." Id. (internal quotations omitted); Henderson, 940 F.2d at 474.
 
 
 24
 For the foregoing reasons, we also conclude that the government action alleged in this case violated none of Appellant's constitutional rights. His Bivens action was therefore properly dismissed.
 
 
 25
 AFFIRMED.
 
 
 
 *
 Hon. David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Though stated in a slightly different context, language in Ray v. Monsanto Co., 420 F.2d 915 (9th Cir.1970), is persuasive:
 [I]n the case now before us, [the government] did not reserve for itself supervisory control which is out of character with the normal arrangement where an owner engaged a contractor [to provide security services]. .... In general these rights [retained by the government] relate to matters over which an owner ordinarily exercises a considerable amount of supervision without intending to assume proprietary or operating control of the independent contractor's ... business.
 ... [Q]uality control over ... performance, time requirements, and safety standards are legitimate concerns of an owner even though the contractor is, and remains an independent business concern.
 Id. at 918-19.
 
 
 [2]
 In Krebs, the state trial court had rejected a public policy argument that Krebs was fired in retaliation for reporting to law enforcement that his superiors were involved in drug dealing. At the time, Krebs was acting as a government informant. 843 P.2d at 313, 315. The Montana Supreme Court reversed the trial court. In doing so, however, it completely recharacterized Krebs as a volunteer who approached law enforcement on his own initiative, was not promised remuneration, provided information only a few times, and worked with law enforcement for only six days. Krebs was only paid $40 for the information, several weeks after he was discharged. Id. at 315-16. Krebs does not undercut our analysis. To the contrary, Krebs indicates that the Montana Supreme Court did not disapprove of the Krebs trial court's theory--that a government agent whose purpose is to investigate and report public policy violations cannot be fired in retaliation for reporting public policy violations. Instead, the Montana Court disagreed only with the trial court's characterization of Krebs